UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HESSIE W.,[1]

        Plaintiff,

        v.                                      **DECISION AND ORDER**
                                                    20-CV-843-A

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        Plaintiff Hessie W. ("Plaintiff"), brings this action seeking review of the Commissioner of Social Security's final decision that denied the application filed by Plaintiff for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 9, 10), and Plaintiff filed a reply (Dkt. No. 12).

        The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

1

process that Administrative Law Judges [ALJs] are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons that follow, the Court finds that substantial evidence supports the final decision of the Commissioner denying Plaintiff's DIB and SSI under the SSA.  That decision is hereby AFFIRMED.

## PROCEDURAL HISTORY

On January 11, 2017, Plaintiff was walking down a set of stairs and tripped over the person in front of him, falling forward on his hands.  T. 265, 282.[2]  A subsequent MRI of his right shoulder confirmed a rotator cuff tear, T. 287, 289-290, and on September 26, 2017, Plaintiff had right shoulder surgery to address that injury, T. 344-345, T. 482.  Plaintiff is right-hand dominant.  T. 349.

Plaintiff was 43 years old in May 2017 when he applied for SSD and SSI, alleging disability beginning on February 1, 2017, due to a torn right rotator cuff, torn tendons in the triceps in both arms, arthritis in both knees, and high blood pressure.  T. 15, 159, 163-164, 171, 200.  Plaintiff's date last insured was December 31, 2018.  T. 15, 17.  His application was initially denied in August 2017.  T. 85-96.  After filing a request for a hearing, T. 97-98, Plaintiff appeared with his attorney and testified at a hearing on March 12, 2019, along with a Vocational Expert ("VE") who also testified, T. 31-59.  Following the hearing, the ALJ issued an unfavorable decision on March 27, 2019, finding Plaintiff not disabled within the meaning of the SSA.  T. 12-26.  Plaintiff thereafter requested review by the Appeals Council, T. 265-266, but his request was

---

[2] "T. __" refers to pages of the administrative transcript.

denied in November 2019, T. 155-157.  This action seeks review of the Commissioner's final decision.  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g).  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### I. Physical RFC finding

"It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis."  *Williams v. Comm'r of Soc. Sec.*, 18-CV-1027, 2020 WL 4904947, 2020 U.S. Dist. LEXIS 151236, *7 (W.D.N.Y. Aug. 20, 2020), citing 20 C.F.R. §§ 404.1545(a)-(e) and *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

Here, after finding that Plaintiff has severe impairments of degenerative joint disease of the right shoulder status post-surgery, and osteoarthritis of the bilateral knees, along with non-severe impairments of obesity and hypertension, the ALJ determined that Plaintiff has the Residual Functional Capacity (RFC) to perform

sedentary work,[3] with the following limitations: *he cannot use the right dominant hand or arm above shoulder level for lifting or carrying more than five pounds*; he could tolerate incidental stair and ramp use, defined as five times per workday for one minute or less; he could not use ladders, ropes, or scaffolds, and he could not work at unprotected heights or with dangerous machines, tools, or chemicals; and he requires the option to stand once every 20 minutes or three times per hour, at position.  T. 17-18.

Plaintiff's single argument regarding the RFC finding is that the ALJ, while finding a particular medical opinion persuasive, failed to acknowledge that the same opinion restricted Plaintiff to weight-bearing of one pound with his dominant hand, and failed to explain why he was rejecting that portion of the opinion.  Plaintiff argues that this error is not harmless because as to the sedentary jobs the ALJ found Plaintiff capable of performing, "[t]here is no evidence that these jobs could be performed if Plaintiff could only lift a maximum of one pound with his dominant hand."

The opinion at issue was rendered on November 15, 2017 by Thomas Duquin, M.D. (the orthopedic surgeon who had performed Plaintiff's September 26, 2017 right shoulder surgery) and Andrew Gage, M.D., at a follow-up appointment to the surgery. Plaintiff denied any concerns at the time and asked when he could return to work, and it was noted that he was "doing well post-operatively."  The plan for Plaintiff's post-operative care and treatment included limiting weight bearing to one pound, continuing

---

[3] Sedentary work is defined by agency regulations as follows: "Sedentary work involves *lifting no more than 10 pounds at a time* and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a) (emphasis added). "'[S]edentary work' generally involves six hours of sitting and two hours of standing or walking during [an eight-hour] workday."  *Acevedo v. Berryhill*, 16-CV-769-MJR, 2017 WL 5495984, 2017 U.S. Dist. LEXIS 189899, *11 (W.D.N.Y. Nov. 16, 2017), citing Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30, *13 and SSR 96-9p, 1996 SSR LEXIS 6, *8-9.

4

with physical therapy, returning to work "light duty", and returning to the clinic in six weeks. Dr. Duquin's and Dr. Gage's notation is as follows:

> Patient is doing very well 7 weeks status post arthroscopic rotator cuff repair surgery. *I've cautioned about using the arm for more activity than 1 pound. He has been trying to use it for some activities including attempting to use a drill. I did caution him against this as he could cause a re-tear of his rotator cuff.* We will begin him in a physical therapy program and I will plan on seeing him back in the office in 6 weeks.

T. 352-353 (emphasis added).

An ALJ must "evaluate every medical opinion [he] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citation omitted), *aff'd sub nom.*, *Pena v. Apfel*, 141 F.3d 1152 (2d Cir. 1998) (summary order). "[A]n ALJ need not 'reconcile explicitly every conflicting shred of medical testimony'", *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citation omitted), though, and "there is no absolute bar to crediting only portions of medical source opinions", *DiFrancesco v. Comm'r of Soc. Sec.*, Case # 18-CV-376-FPG, 2020 WL 467720, 2020 U.S. Dist. LEXIS 15001, *5 (W.D.N.Y. Jan. 29, 2020) (internal quotation marks and citation omitted).

The ALJ found the statement by Drs. Duquin and Gage that Plaintiff could "return to work light duty" to be "persuasive" regarding his right shoulder—and acknowledged that they did not treat him for any other medical condition. T. 23. He reasoned that they were treating physicians and their treatment notes and objective findings supported this conclusion. T. 23.[4] In his decision, the ALJ did not address the post-operative directive

---

[4] Plaintiff's claims in this case were filed after March 27, 2017, which means the new regulations apply to his claims. "For claims filed on or after March 27, 2017, ALJs do not defer to, or give specific evidentiary weight to, any medical opinions. 20 C.F.R. § 416.920c(a). Instead, ALJs must evaluate medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* § 416.920c(c)(1)-(5). Supportability and consistency are the most

by these surgeons that Plaintiff was to limit his weight bearing to one pound, *see* T. 23, or explain why that portion of the medical opinion was rejected by the ALJ to then limit Plaintiff to lifting or carrying no more than five pounds.

Even so, the Court finds no additional evidence is necessary to support the ALJ's decision as to the RFC, and that a remand for further explanations of the ALJ's reasoning is not necessary.

"'[A]lthough there was no medical opinion providing the specific restriction[ ] [of lifting no more than five pounds] reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Harry F. v. Comm'r of Soc. Sec.*, 1:20-CV-0648 CJS, 2021 WL 3828488, 2021 U.S. Dist. LEXIS 162810, *15 (W.D.N.Y. Aug. 27, 2021) (internal citations and quotation marks omitted). Here, there is plenty of evidence in the record to support the RFC finding, including the five-pound limitation.

As argued by the Commissioner, the one-pound lifting restriction was made only seven weeks post-surgery, which was also before Plaintiff had started any physical therapy on his arm. There is nothing in the record suggesting that the one-pound restriction "was anything more than a temporary post-operative limitation." Moreover, while the same note indicated Plaintiff was to return to the surgeons' clinic six weeks after November 15, 2017, there are no subsequent documents from Drs. Duquin and

---

important factors. *Id.* § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by objective medical evidence and the medical source's supporting explanations, and consistency is the extent to which an opinion is consistent with other medical or non-medical sources. *Id.* § 416.920c(c)(1)-(2)." *Tammy T. v. Kijakazi*, Case No. 5:21-cv-1, 2022 U.S. Dist. LEXIS 3751, *35 (D. Vt. Jan. 7, 2022).

Gage in the record—nor does Plaintiff argue that he continued to see these providers or that there is a gap in the record.  On April 13, 2018, at an appointment with his primary care physician, it was noted that physical therapy was helping to improve Plaintiff's right shoulder mobility, and that he had not had to follow up with the orthopedic surgeon "again thus far."  T. 386 ("Has not had to f/u with ortho again thus far.").

It is also apparent from the ALJ's decision that he reviewed the evidence from the months after the surgery and recognized Plaintiff's improvement.  See T. 20-22.  He also found some of Plaintiff's statements "inconsistent with his allegations of severe pain and functional limitations", including, among other things, Plaintiff's testimony at the hearing that he would have been able to do certain sedentary jobs in November 2017, as well as at the time of the hearing if those jobs were available.  T. 22; see T. 36-37.  Plaintiff further testified that after Drs. Duquin and Gage told him he could return to "light work", no doctor stated he could not work.  T. 22; see T. 49.[5]

Moreover, "the ALJ was entitled to base [his] opinion on the medical record as a whole, even if this contradicted the opinion evidence of one physician . . .[, and] resolving contradictory medical opinions is entirely within the discretion and expertise of the ALJ."  Smith v. Berryhill, 17-CV-05639 (PAE)(SN), 2018 U.S. Dist. LEXIS 136639, *47 (S.D.N.Y. Aug. 10, 2018), adopted by 17 Civ. 5639 (PAE) (SN), 2018 WL 4565144, 2018 U.S. Dist. LEXIS 163255, *46-47 (S.D.N.Y. Sept. 24, 2018).

In that regard, Plaintiff does not challenge the ALJ's assessment of the opinion of State agency physician D. Miller, D.O., rendered August 23, 2017 (before the surgery),

---

[5] In addition, according to Plaintiff, the pain in his knees was the main issue keeping him from full-time work, not his right arm or shoulder.  T. 45 (" . . . if it weren't for my knees, I'd probably be able to work period.").  With respect to reaching up over his head, Plaintiff conceded, "it's better than it was", he could pick an item from a shelf "[d]epend[ing] on how heavy it is", and his left shoulder was "okay".  T. 42-43.

7

which the ALJ found to be "very persuasive." T. 23. Dr. Miller opined that Plaintiff could perform a reduced range of sedentary work, to include occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds, due to in part Plaintiff's right shoulder pain from his rotator cuff tear. T. 23; *see* T. 65. The ALJ reasoned that Dr. Miller was familiar with Social Security's rules and regulations, he or she had the ability to review the entire written record up to the date of the assessment, and he or she cited specific medical evidence to support the assessment. T. 23.

The ALJ's role as the factfinder was to determine persuasiveness, which the ALJ did here, and the Court will not assume that role. The ALJ weighed evidence before him to determine that Plaintiff could do sedentary work—including medical opinions, Plaintiff's hearing testimony, and treatment records and history of improvement—and substantial evidence appropriately interpreted under applicable law supports the ALJ's conclusion that Plaintiff was not disabled.

## II.  Step Five

"At step five of the disability analysis, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy . . . An ALJ can make the step five determination by eliciting VE testimony." *Stover v. Comm'r of Soc. Sec.*, No. 17-CV-1029-FPG, 2018 WL 5262463, 2018 U.S. Dist. LEXIS 181821, *7 (W.D.N.Y. Oct. 23, 2018), citing 20 C.F.R. §§ 404.1560(c), 416.960(c); *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). "At step five . . . the Commissioner has 'the burden of showing that [a claimant] is actually capable of performing' jobs identified by the VE." *Martin v. Saul*, Civ. No.

3:18CV00914(SALM), 2019 WL 3852580, 2019 U.S. Dist. LEXIS 138861, *18 (D. Conn. Aug. 16, 2019).

Plaintiff argues that the ALJ's step five determination is erroneous, and remand is required.

After the ALJ formulated an RFC of sedentary work with limitations to include, among others, "*he could not work . . . with dangerous machines*, tools or chemicals", and "claimant requires the option to stand once every 20 minutes or three times per hour, at position", T. 18 (emphasis added), the ALJ concluded that Plaintiff was unable to perform any past relevant work and thus proceeded to the final step of the sequential evaluation process.

At the hearing, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, education level, and past work experience, with the same limitations that are in the RFC. *See* T. 52-58. The VE testified that such a person could perform two unskilled jobs, *i.e.*, "ink printer" (estimated at 171,000 jobs in the national economy) and "order clerk" (estimated at 169,000 jobs). However, when asked about the sit-stand option (standing once every 20 minutes or three times per hour), the VE testified that while the ink printer job has a stand-sit option, the order clerk position does not as it is "more of a true sedentary position" and thus that position would be eliminated with such a limitation. T. 57. In his decision, the ALJ found that the VE testified that an individual like Plaintiff (and with the RFC posed to the VE) could perform both the ink printer job *and* the order clerk job. T. 25. The ALJ then concluded that Defendant was not disabled, based on the testimony of the VE. T. 25.

Plaintiff argues that the order clerk job was eliminated with the RFC, and the ALJ should not have found that Plaintiff could perform that job. The Commissioner concedes this point but argues that the error was harmless because the ink printer job was unaffected and exists in significant numbers in the national economy.

Any error with respect to the order clerk job would be harmless, assuming there is no issue with the ink printer job, because the VE estimated the latter at 171,000 jobs in the national economy. "The Commissioner meets [his or] her burden at the fifth step by identifying even a single job that exists in significant numbers in the national economy that the claimant can perform." *Moslow v. Berryhill*, No. 1:16-CV-00198-MAT, 2019 WL 1508045, 2019 U.S. Dist. LEXIS 58651, *10 (W.D.N.Y. Apr. 4, 2019) (collecting cases) (unskilled job of small products assembler, with 218,740 jobs); *see Saez v. Saul*, No. 3:18-CV-2061 (SRU), 2020 WL 2572770, 2020 U.S. Dist. LEXIS 88688, *23 (D. Conn. May 20, 2020) ("Here, the ALJ adopted [the VE]'s testimony that 60,000 production worker jobs were available in the national economy. That number readily satisfies the Commissioner's burden; courts in this district have routinely held that numbers less than 30,000 meet the 'significant number' threshold.") (collecting cases), citing *Koutrakos v. Colvin*, No. 3:13 CV 1290 JGM, 2015 WL 1190100, 2015 U.S. Dist. LEXIS 31524, *70 (D. Conn. Mar. 16, 2015) ("Within the Second Circuit, courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers[,] but [c]ourts have adopted a relatively low threshold number.") (internal quotation marks and citations omitted) (collecting cases).

However, Plaintiff argues that the ALJ also erred in finding that he could perform the ink printer job because it requires the operation of a "platen press", while the RFC restricts him from working with dangerous machinery.  In other words, Plaintiff argues that a "platen press" constitutes "dangerous machinery", which he reasons runs contrary to a limitation in the RFC and thus eliminates both jobs the VE testified he could do.

The Dictionary of Occupational Titles ("DOT") defines the job of ink printer as: "Tends platen-press that prints designs and identifying data on leather, leatherette, or satin-covered jewelry, watch and instrument cases, and case linings.  Cleans and lubricates press."  652.685-038 Ink Printer, DICOT 652.685-038.  Nothing in the job's definition identifies a "platen-press" as dangerous.

Utilizing the Encyclopedia Britannica's definition of a "platen press",[6] Plaintiff argues that "[a]t no point did the ALJ or VE reconcile how a machine that could exert 570 pounds of pressure would not be considered 'dangerous machinery' . . . [w]ithout reconciling this obvious conflict, the ALJ's finding that Plaintiff could perform the job of an 'ink printer' within the assessed RFC was unsupported."  The Commissioner argues that "there is no apparent conflict between the VE's testimony and the DOT, despite [P]laintiff's attempt to create one."

---

[6] The Court takes judicial notice, see generally Martin v. Shalala, 93-CV-898S, 1995 WL 222059, 1995 U.S. Dist. LEXIS 4895, *27-28 (W.D.N.Y. Mar. 20, 1995), that another dictionary definition of "platen press" is "a small printing press in which a platen presses the paper against a form secured to an opposed vertical flat bed."  Dictionary: platen press, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/platen%20press (last visited Jan. 20, 2022).  A "platen" is "a flat plate", "especially one that exerts or receives pressure (as in a printing press)".  Dictionary: platen, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/platen (last visited Jan. 20, 2022).

11

Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (SSA 2000),[7] which clarifies the SSA's standards for a VE's role, "provides that a vocational expert's testimony should generally be consistent with the occupational information contained in the DOT and '[w]hen there is an *apparent unresolved conflict* between [the testimony] and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the [vocational expert's testimony].'"  *Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018), citing SSR 00-4p.  "This Ruling place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony."  *Marjanovic v. Comm'r of Soc. Sec.*, Case # 19-CV-246-FPG, 2020 WL 3445676, 2020 U.S. Dist. LEXIS 110811, *8 (W.D.N.Y. June 23, 2020) (internal quotation marks and citation omitted); *see Lockwood v. Comm'r of SSA*, 914 F.3d 87, 92 (2d Cir. 2019) (holding that "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the Dictionary describes as requiring 'reaching' . . . creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony.").  Indeed, "[w]here there is an unexplained and direct contradiction of the DOT, the expert's testimony does not constitute substantial evidence to support a finding that jobs are available."  *Palacios v. Berryhill*, No. 17-cv-04802 (ALC), 2018 WL 4565141, 2018 U.S. Dist. LEXIS 163293, *35 (S.D.N.Y. Sept. 24, 2018) (internal quotation marks and citations omitted).

---

[7] "'Social Security Rulings . . . are binding on all components of the Social Security Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted.' 20 C.F.R. § 402.35(b)(1)."  *Richards v. Berryhill*, 16-CV-804, 2018 WL 6831153, 2018 U.S. Dist. LEXIS 217513, *17 n.7 (W.D.N.Y. Dec. 28, 2018).

The ALJ must also affirmatively identify and resolve any conflict between testimony of the VE and the Selected Characteristics of Occupations ("SCO") (the "sister publication" of the DOT), because the SCO "is treated as part of the DOT." *Daigle v. Saul*, No. 3:19-cv-00724 (JAM), 2020 WL 5793354, 2020 U.S. Dist. LEXIS 177821, *23-25 (Sept. 28, 2020) (holding that remand was required under *Lockwood* where "[t]here was a conflict between the expert's testimony that a kitchen helper or packer or material handler were exposed to 'moderate' noise and the SCO, which declared the noise of all three jobs 'loud'", and the ALJ failed to recognize or resolve that conflict).

The Commissioner argues that "dangerous machinery" is akin to "hazardous machinery", which is a term defined in the SCO. The DOT description of ink printer, as the Commissioner points out, "does not identify any hazards entailed in this position",[8] including "moving mechanical parts of equipment, tools, or machinery". *See* 652.685-038 Ink Printer, DICOT 652.685-038 (noting that "moving mech[anical] parts" and "toxic caustic chem[icals]" are not present in the job of ink printer, and no other environmental conditions are present). The Commissioner further argues that the RFC does not preclude Plaintiff from working with any type of machine, just "dangerous" ones, and Plaintiff does not establish that the platen press is "vocationally hazardous." Moreover, Plaintiff fails to establish that it is any more dangerous than machines individuals use

---

[8] SSR 96-9P (S.S.A. July 2, 1996) explains, "In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. The 'hazards' defined in the SCO are considered unusual in unskilled sedentary work. They include: *moving mechanical parts of equipment, tools, or machinery*; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base" (emphasis added).

daily, such as microwaves, stoves, or refrigerators, and "[e]ven machines that have heating or cutting elements are not necessarily hazardous."[9]

Plaintiff disputes neither the Commissioner's reasoning that "dangerous machinery" is likened to "hazardous machinery," nor that the DOT for ink printer states there are no hazardous, environmental restrictions in the workplace. Rather, he argues that a platen press "can exert 570 pounds of pressure per square inch" and "the ink printer use[s] a machine that exert[s] significant amounts of pressure," which should have been addressed by the ALJ.

Neither the DOT nor the SCO state the amount of pressure the platen press exerts—or that it is "significant" or renders the machine "hazardous" or "dangerous." The Court concludes that there is no "apparent conflict" between the DOT listing for ink printer and Plaintiff's RFC limitation to not work with "dangerous machines." *See generally Shannon v. Astrue*, NO. EDCV 10-359 AGR, 2011 WL 3420846, 2011 U.S. Dist. LEXIS 86078, *8 (C.D. Cal. Aug. 4, 2011) ("Shannon makes no showing that the duty of loading and unloading previously setup machines is the type of hazard implicated by the RFC assessment . . . The DOT description of assembler does not indicate such hazards."); *Cowen v. Astrue*, Case No. 09-1206-SAC, 2010 WL 2925251, 2010 U.S. Dist. LEXIS 73544, *33 (D. Kan. July 21, 2010) ("In the absence of any evidence that these jobs require concentrated exposure to dangerous moving machinery, the court finds no error in the ALJ's reliance on the VE testimony that plaintiff can perform the jobs identified in light of all the limitations set forth by the ALJ."); *compare Lockwood*, 914 F.3d at 92 (apparent conflict requiring remand when the VE's

---

[9] The Commissioner argues that the VE "did not believe that the machine was dangerous". There was no explicit testimony by the VE to this effect.

testimony established at least three available jobs would accommodate the limitation requiring the plaintiff to "avoid all overhead reaching tasks", whereas the DOT established that each of those three jobs required occasional or frequent "reaching").

As such, remand is not required as to Step Five.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. No. 9) for judgment on the pleadings is DENIED, the Commissioner's cross-motion (Dkt. No. 10) for similar relief is GRANTED, and the Commissioner's final decision is AFFIRMED.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

                                      ___s/Richard J. Arcara_____
                                      HONORABLE RICHARD J. ARCARA
                                      UNITED STATES DISTRICT COURT

Dated:   January 20, 2022
          Buffalo, New York